UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------x
WILLIAM LEE, *et al.*,

        Plaintiffs,

-against-

ISLAMIC REPUBLIC OF IRAN,

        Defendant.
------------------------------------------------------------------------x

Case No.: 19-cv-830-APM

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR PROPOSED METHOD FOR CALCULATING PUNITIVE DAMAGES

Pursuant to the Court's January 20, 2023 Minute Order, Plaintiffs respectfully submit this brief in support of their proposed method for calculating proposed damages. The method proposed below—multiplying each Plaintiff's compensatory damages award by **three**, is both typical in this District and provides the Court flexibility to provide awards in multiple final judgments, so as not to prejudice the 19 Plaintiffs whose claims are the subject of R&Rs which are ready for review by the Court.

## ARGUMENT

**I.    AN AWARD OF PUNITIVE DAMAGES IS WARRANTED AGAINST IRAN**

Section 1605A specifically permits punitive damages. 28 U.S.C. § 1605A(c). Punitive damages "are awarded not to compensate the victims, but to 'punish outrageous behavior and deter such outrageous conduct in the future.'" *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017) (quoting *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015)).

Courts in this District have found that punitive damages are "warranted where 'defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and

subsidized a known terrorist organization whose modus operandi included the targeting, brutalization, and murder of American citizens and others.'" *Id.* (quoting *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 85 (D.D.C. 2011)). Courts evaluate four factors to determine the propriety of awarding punitive damages: "(1) the character of the defendant's act, (2) the nature and extent of harm to the plaintiffs that defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 119 (D.D.C. 2015) (quoting *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)) (internal quotations omitted). "Courts have found these factors to be satisfied when a defendant has provided material support to a terrorist organization in carrying out an act of terrorism." *Id.* And, more specifically, courts have found punitive damages appropriate where Iran has supported Foreign Terrorist Organizations including Hezbollah and the Iranian Revolutionary Guards Corps ("IRGC"). *See, e.g., Ackley v. Islamic Republic of Iran*, No. 20-cv-621 (BAH), 2022 WL 3354720, at *60 (D.D.C. Aug. 12, 2022); *Flanagan*, 87 F. Supp. 3d 93, at 119-27; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 87-90 (D.D.C. 2010); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79-82 (D.D.C. 2010).

Punitive damages are accordingly appropriate here, where the Explosively Formed Penetrators ("EFP") employed in three of the four attacks ruled on by the Court were found to have been "of original Hezbollah and IRGC design that was supplied by the IRGC," 518 F. Supp. 3d 475, 487-88 (citing Expert Report of COL (Ret.) Kevin Lutz, PX-159, at 70-71). *See also id.* at 486, 487. The fourth attack was found by this Court to have been perpetrated by the Iraqi Shi'a group Asayb al-Haq ("AAH"), which the Court found "was created by the IRGC and trained by Hezbollah." *Id.* at 489 (citing Expert Report of Michael P. Pregent, PX-155, at 37).

## II.   THE AWARD OF PUNITIVE DAMAGES SHOULD BE COMPENSATORY DAMAGES MULTIPLIED BY A FACTOR OF THREE (3X)

Courts in this District have varied in how they award punitive damages: "For cases against Iran specifically, judges here have used at least four different methods over the past nineteen years: (1) the *Flatow* method, (2) a flat $300 million award, (3) applying a court-determined multiplier on compensatory damages, and (4) awarding punitive damages equal to compensatory damages." *Abedini v. Islamic Republic of Iran*, 422 F. Supp. 3d 118, 141 (D.D.C. 2019).

The first two methods share a provenance. The Court in *Flatow v. Islamic Republic of Iran* awarded "punitive damages in the amount of three times the Islamic Republic of Iran's annual expenditure for terrorist activities." 999 F. Supp. 1, 34 (D.D.C. 1998). The flat $300 million award was borne out of this *Flatow* method, as it "was established and used when the prevailing estimate of Iran's terrorism spending was between $75—$200 million." *See Abedini*, 422 F. Supp. 3d at 141. *See, e.g., Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 53 (D.D.C. 2001) ("Further, $300 million is an amount consistent with the punitive damages levied several times in the past."). In certain circumstances, this method has been rejected because "the $300 million figure was based on expert testimony in … cases … decided over 15 years ago." *See Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 167 (D.D.C. 2017). Indeed, experts in more recent cases have testified that "the financial material support provided by Iran in support of terrorism is in the range of $300 million to $500 million a year." *Oveissi*, 879 F. Supp. 2d at 56. Most recently, the *Karcher* plaintiffs' expert Dr. Matthew Levitt testified during the three-day evidentiary hearing in December 2018 that "now, the US government publicly estimates that the amount of money in support Iran gives to Hezbollah is more to the tune of $700 million a year or more." *Karcher v. Islamic Republic of Iran*, ECF No. 69, 50:2-4.

3

These two methods present other issues, as well. Courts using those methods generally awarded $300,000,000 per family, but families are often split across multiple cases (*i.e.*, there are members of a single family in *Lee* and *Stearns, et al. v. Islamic Republic of Iran*, No. 17-cv-131 (RCL)). That situation would prevent a court from issuing final judgment for that family until they all had compensatory damages awards. Second, of course, providing $300,000,000 per family could lead to absurdly large awards where cases involve, for example, over 100 families.

Better suited for a case like this is awarding a multiple of compensatory damages—that does not require additional evidence as to Iran's expenditures on terrorism and is easy to apply on a per-Plaintiff basis. When awarding punitive damages equal to compensatory damages, this Court in *Abedini* compared the plaintiff in the case to other "Iranian-American citizens who were falsely imprisoned and tortured in Iranian prison" who were awarded the same punitive damages, and contrasted those awards to the "court-determined multiplier of compensatory damages" awarded in "actions against Iran by hundreds of plaintiffs who were family members or victims themselves of the Beirut bombing." *Abedini*, 422 F. Supp. 3d at 142.

Multipliers of compensatory awards as punitive damages have not been limited to Beirut bombing cases; for instance, in *Fritz v. Islamic Republic of Iran*, a case involving the January 20, 2007, attack at issue here, the Court noted that "[r]ecently, several decisions from this Court have calculated the total compensatory damages awarded regarding a victim, and then multiplied that award 'by a factor between one and five.'" *See* 324 F. Supp. 3d 54, 65 and n.3 (D.D.C. 2018). *Fritz*, a case limited to the Karbala attack (just one of the 99 attacks at issue here, *see Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 488-90 (D.D.C. 2021)), used a factor of two, but others have used three. *See Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 106 (D.D.C. 2017) (using a factor of three); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50 (D.D.C. 2012), *vacated*

4

*on other grounds*, No. 10-cv-1689 (RCL), 2019 WL 8060796 (D.D.C. Sept. 11, 2019) (same).

A punitive damages award keyed to Plaintiffs' compensatory awards is the preferable method here because it provides the Court flexibility to provide awards in multiple final judgments, so as not to prejudice the 19 Plaintiffs whose claims are the subject of R&Rs which are ready for review by the Court.

Also, this method does not "limit[] a judge's discretion to tailor a punitive damages award appropriate to the magnitude of the underlying injury." *See Abedini*, 422 F. Supp. 3d at 142. Plaintiffs respectfully submit that Iran's established conduct in this case—a targeted campaign to kill and maim hundreds of U.S. soldiers, most often using a uniquely vicious weapon, the EFP—is as reprehensible as any alleged in an FSIA case. Accordingly, a multiplier of five would be entirely appropriate. That said, because of that heinous conduct, the likely compensatory damages in this case will be very high, making the punitive damages astronomical. Thus, so as not to produce a punitive damages figure completely unmoored from Plaintiffs' future chances of recovering on Iranian assets (however unlikely that may be), Plaintiffs respectfully submit that a multiplier of three is most appropriate here.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request a punitive damages award in the amount of three times the total compensatory damages the Court awards to each Plaintiff.

Dated: January 20, 2023

                                                    Respectfully submitted,

**OSEN LLC**

By:   /s/ Dina Gielchinsky
       Dina Gielchinsky (DC Bar No. NJ011)
       Gary M. Osen (DC Bar No. NJ009)
       Ari Ungar (DC Bar No. NJ008)
       Michael J. Radine (DC Bar No. NJ015)
       190 Moore Street, Suite 272
       Hackensack, NJ 07601
       Tel. (201) 265-6400

**TURNER & ASSOCIATES, P.A.**
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

Attorneys for Plaintiffs