UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WILLIAM LEE, *et al*.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-cv-00830 (APM)** |
| | ) | |
| **ISLAMIC REPUBLIC OF IRAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This Memorandum Opinion addresses the recommended damages awards for 14 Plaintiffs, as contained in the Special Master's first report submitted to the court.  For the reasons stated below, the court adopts the Special Master's recommendations.

### II.    PROCEDURAL BACKGROUND

On February 1, 2021, the court granted Plaintiffs' motion for default judgment against Defendant Islamic Republic of Iran ("Iran") with regard to liability.  *Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 496 (D.D.C. 2021).  The court then referred the case to a Special Master, Professor Stephen A. Saltzburg, to prepare proposed findings of fact and recommendations for compensatory damages for the 20 Plaintiffs covered by the liability decision.  Order Appointing Prof. Stephen A. Saltzburg as Special Master, ECF No. 45, at 1–2.  The court instructed that the Special Master "shall be guided in reviewing and evaluating damages claims by Foreign Sovereign Immunities Act ('FSIA') opinions, including *Estate of Heiser v. Islamic Republic of Iran*, 466

F. Supp. 2d 229, 269, 318 (D.D.C. 2006); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010), and their progeny." *Id.* at 2.

The Special Master has now filed two reports.   *See* Special Master's Report and Recommendations, ECF No. 59 [hereinafter First Report]; Special Master's Report and Recommendations Regarding Damages for Four WIA Plaintiffs Identified in the Court's February 1, 2021, Order, ECF No. 67.  This opinion addresses the damages recommended in the First Report for 14 Plaintiffs.[1]  Plaintiffs have not objected to the Special Master's recommendations.  Notice of Non-Objection to Special Master's Reports and Recommendations, ECF No. 75.

## III.   DISCUSSION

In its prior Memorandum Opinion, the court concluded that Iran was "liable for Plaintiffs' injuries under 28 U.S.C. § 1605A(c)."   *Lee*, 518 F. Supp. 3d at 496.   "The only remaining questions, therefore, are what type of damages Plaintiffs are entitled to recover and in what amounts." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59 (D.D.C. 2018).  Plaintiffs' claims fall into two categories: (1) solatium claims brought by family members of deceased and injured victims; and (2) an economic loss claim brought by the Estate of David G. Taylor, Jr. The court addresses each in turn.

### A.      Solatium Damages

"A claim of solatium is a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  "The state-sponsored terrorism exception

---

[1] Plaintiffs submitted damages requests on behalf of 15 of the 20 Plaintiffs covered by the first liability decision.  First Report at 2.  The claims for Plaintiff Estate of Andrew J. Habseiger are still pending. *Id.* at 19.  Accordingly, this opinion addresses the 14 Plaintiffs for which the Special Master made a damages recommendation.

to the FSIA expressly contemplates the award of solatium damages to the close relatives of terrorism victims." *Fritz*, 324 F. Supp. 3d at 61–62 (citing 28 U.S.C. § 1605A(c)). There is a "presumption that family members in direct lineal relationship suffer compensable mental anguish[,] . . . and testimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages." *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted). "In determining the appropriate award of damages for solatium, the Court may look to prior decisions awarding damages for intentional infliction of emotional distress as well as to decisions regarding solatium." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 78 (D.D.C. 2010) (internal quotation marks omitted).

This district court "has developed a general framework for the calculation of proper damage awards in FSIA cases" based on principles articulated in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d at 299. *See Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011). "Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings," and "families of victims who have died are typically awarded greater damages than families of victims who remain alive." *Heiser*, 466 F. Supp. 2d at 269 (internal quotation marks omitted). Based on these principles, courts in this district generally award spouses of deceased victims $8 million, while parents and children[2] receive $5 million, and siblings receive $2.5 million. *See Oveissi*, 768 F. Supp. 2d at 26. "Relatives of surviving

---

[2] The court notes there is some discrepancy in the baseline amount awarded to children, with some courts awarding children of deceased victims $5 million, and others awarding $3 million. *Compare Oveissi*, 768 F. Supp. 2d at 26 ("[C]hildren [of deceased victims] received $5 million . . . ."), *with Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012) ("Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million."). The court finds that a $5 million solatium award is the appropriate baseline for children of deceased victims, as established in *Heiser*. *See Heiser*, 466 F. Supp. 2d at 318 ("[T]he Court typically awards children of [deceased] terrorist attack victims $5 million . . . ."); *see also Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007) ("Parents of victims typically receive awards similar in amount to those awarded to children of the victim.").

servicemen receive[] awards valued at half of the awards to family members of the deceased . . . ." *Murphy*, 740 F. Supp. 2d at 79. Importantly, the baseline amounts "are merely guideposts, and courts should deviate depending on the circumstances." *Fritz*, 324 F. Supp. 3d at 62. "A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief—encapsulated in the solatium award." *Oveissi*, 768 F. Supp. 2d at 25.

*Family of David G. Taylor, Jr.* Major David G. Taylor, Jr., was killed in an Explosively Formed Penetrator ("EFP") attack on October 22, 2006. *Lee*, 518 F. Supp. 3d at 485–86. The Special Master made solatium award recommendations for Mr. Taylor's widow, Michelle Taylor ($8 million); his minor son, J.T. ($5 million); his mother, Phyllis Taylor ($5 million); and his brother, John Taylor ($2.5 million). First Report at 4–17. The recommendations are consistent with the framework set forth in *Heiser* and its progeny for family members of deceased servicemembers. The court adopts the Special Master's damages recommendations for Plaintiffs Michelle Taylor, minor J.T., Phyllis Taylor, and John Taylor.

*Family of Robert Canine.* Staff Sergeant Robert Canine was injured in an EFP attack on May 17, 2009. *Lee*, 518 F. Supp. 3d at 487–88. The Special Master recommended that Mr. Canine's son, Sebastian Canine, receive a solatium award of $2.5 million. First Report at 31. This amount is consistent with the framework set forth in *Heiser* and its progeny for children of injured servicemembers, and the court adopts the Special Master's recommendation as to Plaintiff Sebastian Canine.

*Family of Nathan Richards.* Specialist Nathan Richards was injured in an EFP attack on May 17, 2009. *Lee*, 518 F. Supp. 3d at 487–88; First Report at 27. The Special Master recommended that Mr. Richards's father, Steven Richards, receive a solatium award of $2.5

4

million.  First Report at 35.  This amount is consistent with the framework set forth in *Heiser* and its progeny for parents of injured servicemembers, and the court adopts the Special Master's recommendation as to Plaintiff Steven Richards.

*Family of Christopher Hake*.  Staff Sergeant Christopher Hake was killed in an EFP attack on March 23, 2008.  *Lee*, 518 F. Supp. 3d at 486–87.  The Special Master recommended that Mr. Hake's stepbrother, Jason York, and stepsister, Jennifer York, receive a solatium award of $2.5 million each.  First Report at 19–26.  Previously, courts in this district "generally adopted the strict meaning of immediate family, defined as one's spouse, parents, siblings, and children." *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 28 (D.D.C. 2009) (internal quotation marks omitted).  However, "some courts have allowed relatives who either resided in the same household with the victim or were legal guardians to recover for negligent infliction of emotional distress."  *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003).  The D.C. Circuit has reasoned that where claimants "were members of the victim's household" such that they were viewed as the "functional equivalents of immediate family members," "the immediate-family requirement could potentially be stretched to include . . . stepsiblings." *Valore*, 700 F. Supp. 2d at 79 (internal quotation marks omitted) (quoting *Bettis*, 315 F.3d at 337).

The evidence shows that Jason York and Jennifer York met their stepbrother, Mr. Hake, when they were eight- and four-years old, respectively, and that they viewed him as they would a biological sibling.  First Report, App'x I, ECF No. 59-1 [hereinafter App'x I], at 59 ("Chris was the only brother I ever had."); First Report at 21, 24 ("[W]e were always just brother and sister." (internal quotation marks omitted)).  Although they did not live in the same household as children, they "spent a lot of time" together.  App'x I at 59.  Mr. Hake "stayed with [his stepsiblings] many days during school breaks" and for "a few weeks during the summers," where he shared a room

with Mr. York.  *Id.*  They spent Thanksgiving and Christmas holidays together and took camping trips over Memorial Day and Labor Day weekends.  *Id.*  The court is satisfied that Mr. York, Ms. York, and Mr. Hake are the "functional equivalents of immediate family members."  *Bettis*, 315 F.3d at 337.  Based on the record evidence, this court adopts the Special Master's recommendations for Plaintiffs Jason York and Jennifer York.

*Family of Brian Freeman.*  Captain Brian Freeman was kidnapped and killed in the January 20, 2007 attack in Karbala, Iraq.  *Lee*, 518 F. Supp. 3d at 488–89.  The Special Master recommends solatium awards for Mr. Freeman's stepfather, Albert Snyder ($6 million); his stepmother, Kathaleen Freeman ($6 million); and his stepbrother, Richard Lee ($3 million).  First Report at 40–48.  These recommendations deviate from the *Heiser* baseline, which awards parents and siblings of deceased victims $5 million and $2.5 million, respectively.  The court will address (1) whether the immediate family requirement is met, and (2) whether the upward departure from the *Heiser* framework is warranted.  *See, e.g.*, *Oveissi*, 768 F. Supp. 2d at 26.

A review of the record shows that the immediate family requirement is met—Mr. Snyder, Mrs. Freeman, and Mr. Lee "were members" of Mr. Freeman's household, such that they were viewed as the "functional equivalents of immediate family members."  *Valore*, 700 F. Supp. 2d at 79 (internal quotation marks omitted).  When Mr. Snyder married Mr. Freeman's mother, 10-year old Brian Freeman was the best man at their wedding, and the two spent "hours together fishing, kayaking, and camping, which created an unbreakable bond between [them]."  First Report at 42 (internal quotation marks omitted).  Mr. Snyder was with Mr. Freeman's wife and young son when "[m]ilitary chaplains arrived at Mr. Snyder's house to inform them that Mr. Freeman had been killed."  *Id.* at 42–43.  The court is satisfied that Mr. Snyder and Mr. Freeman viewed each other "as the functional equivalents of immediate family members."  *Bettis*, 315 F.3d at 337.

Mrs. Freeman married Mr. Freeman's father when Mr. Freeman was just five years old. First Report at 44. He called her "mom" and "Mrs. Freeman thought of him as her own son." *Id.* at 45 (internal quotation marks omitted). She "lived in the same household with Mr. Freeman starting from when Mr. Freeman was five." *Id.* at 46. The court is satisfied that Mrs. Freeman and Mr. Freeman are the "functional equivalents of immediate family members." *Bettis*, 315 F.3d at 337. Mr. Lee and Mr. Freeman became stepbrothers when Mr. Lee was about 13-years old and Mr. Freeman was about five. First Report, App'x II, ECF No. 59-2, at 56. Because their parents "worked a lot," Mr. Lee "took care" of Mr. Freeman. *Id.* Mr. Lee "cooked for him, helped him with his homework, and looked out for him." *Id.* Mr. Lee also "taught him how to swim," "how to ride a bike," and "how to drive a car." *Id.* He attests that the two "forged a special connection, an unbreakable bond," and that Mr. Lee included Mr. Freeman in everything he did. *Id.* The court is satisfied that Mr. Lee and Mr. Freeman are the "functional equivalents of immediate family members." *Bettis*, 315 F.3d at 337.

The court now addresses the Special Master's recommendation to deviate from the baseline framework in *Heiser*. The damages recommended by the Special Master represent a 20% upward departure from the framework set forth in *Heiser*, where parents of deceased servicemembers receive $5 million and siblings receive $2.5 million. *See Oveissi*, 768 F. Supp. 2d at 26. While deviations from the framework are permitted, any departure will be "small relative to the award specified by the developed framework, absent circumstances that appreciably worsen a claimant's pain and suffering, such as cases involving torture or kidnapping." *Id.* at 27 (internal quotation marks omitted).

The court finds that because Mr. Freeman's case "involv[ed] torture [and] kidnapping," an upward deviation from the *Heiser* framework is warranted. *Id*. (internal quotation marks omitted).

On the day of the attack, Mr. Freeman was abducted by assailants, handcuffed to a wounded soldier, and loaded into an SUV that fled the scene. *Lee*, 518 F. Supp. 3d at 488–89. The SUV was eventually "stopped at an Iraqi Army checkpoint," and when the assailants "discovered they could not pass the checkpoint, [they] . . . began executing the U.S. soldier hostages." *Id.* at 489. These facts are identical to those involving the killing of First Lieutenant Jacob Fritz—another Karbala kidnapping victim who was killed alongside Mr. Freeman—whose parents and siblings received a higher award than the *Heiser* framework. *See Fritz v. Islamic Republic of Iran*, No. 15-cv-456-RDM, 2018 WL 5046229, at *22 (D.D.C. Aug. 13, 2018) (special master recommending solatium awards of $6 million for parents, and $3 million for siblings, of victims kidnapped and killed in the Karbala attack); *Fritz*, 324 F. Supp. 3d at 62 (adopting the special master's recommendations for Karbala victims). Accordingly, the court adopts the Special Master's recommendations for Plaintiffs Albert Snyder, Kathaleen Freeman, and Richard Lee.

*Family of Evan Kirby*. Evan Kirby was injured in the January 20, 2007 attack in Karbala, Iraq. Pls.' Mot. to Seal Certain Docs., ECF No. 44, Ex. 2, ECF No. 44-2, ¶ 4. The Special Master recommended a solatium award of $1,875,000 each for Mr. Kirby's parents, Marcia and Steven Kirby. First Report at 52–55. This represents a 25% downward departure from the *Heiser* framework, which awards $2.5 million for parents of injured servicemembers. *See e.g.*, *Oveissi*, 768 F. Supp. 2d at 26 n.10. The Special Master adjusted the baseline award "based on the nature of the injury, the pain associated with it, the duration of the hospitalization, and the degree and length of impairment." First Report at 54. The record shows that the Karbala attack was *not* an EFP attack, and that Mr. Kirby did not suffer "physical injuries such as compound fractures, severe flesh wounds, and wounds and scars from shrapnel, as well as lasting and severe psychological pain." *Id.* (internal quotation marks omitted). The record further shows that Mr. Kirby did suffer

from PTSD, suicidal thoughts, alcoholism, panic attacks, anger, and depression.  *Id.* at 50–51. Without diminishing the significance of those consequences, the fact that Mr. Kirby did not suffer severe physical injuries justifies the downward departure from the *Heiser* framework.  The court adopts the Special Master's recommendations for Plaintiffs Steven Kirby and Marcia Kirby.

In sum, after reviewing the Special Master's report and the evidence contained therein, this court finds that the Special Master has appropriately applied the established *Heiser* damages framework and therefore adopts the recommended solatium awards.

### B.    Economic Loss Claim

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(c)).  "The estates of the direct victims can also recover for the pain and suffering endured" by the victim.  *Fritz*, 324 F. Supp. 3d at 60.  "Traditionally, plaintiffs may prove economic losses by the submission of a forensic economist's expert report."  *Id.* at 59.  "When evaluating an expert's report, the Court must consider the reasonableness and foundation of the assumptions relied upon by the expert."  *Id.* (internal quotation marks omitted).

Plaintiffs have submitted an economic loss report prepared by Dr. L. Wayne Plumly, Jr., for the Estate of David G. Taylor, Jr.  *See* App'x I at 12–18.  The Special Master noted that "Dr. Plumly has previously provided expert reports regarding economic losses in terrorism cases which were adopted" by courts in this district.  First Report at 6 (citing *Relvas v. Islamic Republic of Iran*, No. 14-cv-01752-RCL, 2018 WL 1092445, at *4 (D.D.C. Feb. 28, 2018)).  Based on a review of the record, the court finds that Dr. Plumly's calculations, and the assumptions Dr. Plumly

relied on, are reasonable.  Accordingly, the court adopts the Special Master's recommendation as to the economic loss claim of the Estate of David G. Taylor, Jr.

## IV.     CONCLUSION

For the stated reasons, the court adopts the recommendations of the Special Master for the 14 Plaintiffs addressed in the Special Master's Report and Recommendations, ECF No. 59. A separate Order and Judgment consistent with these findings accompanies this Memorandum Opinion.

Dated:  June 29, 2023

Amit P. Mehta
United States District Judge