UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

WILLIAM LEE, et al.,                    )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )        Case No. 19-cv-830 (APM)
                                        )
ISLAMIC REPUBLIC OF IRAN,               )
                                        )
        Defendant.                      )
———————————————————————  )

## MEMORANDUM OPINION

### I.

This Memorandum Opinion addresses the recommended liability findings and damages awards for 14 Plaintiffs contained in Special Master Jim Letten's Second Report and Recommendations submitted to the court, ECF No. 137. The court adopts the Special Master's recommendations, finding Iran liable for Plaintiffs' injuries and awarding the recommended damages.

### II.

This case involves 99 attacks and is brought by over 352 Plaintiffs, consisting of military servicemembers and contractors, their estates, and their family members, who seek relief for the personal injuries of surviving victims, the deaths of victims who were killed, and the intentional infliction of severe emotional distress endured by the families of those injured or killed. *Lee v. Islamic Republic of Iran*, 656 F. Supp. 3d 11, 21 (D.D.C. 2023) ("*Lee II*"). This court has now found Defendant Islamic Republic of Iran ("Iran") liable under the Foreign Sovereign Immunities Act ("FSIA") for four "bellwether" attacks, which involve the claims of 20 Plaintiffs, *Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 479 (D.D.C. 2021) ("*Lee I*"), and the injuries of

surviving Plaintiffs and Plaintiff-estates arising from 27 non-bellwether attacks, *Lee II*, 656 F. Supp. 3d at 21, 56–57.  In *Lee II*, the court did not, however, make findings as to Iran's liability for the claims of family-member Plaintiffs due to the absence of proof satisfying the threshold requirements that an FSIA plaintiff have a qualifying relationship to the victim, *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 400 (D.D.C. 2015), and that they be a national of the United States at the time of the attack, 28 U.S.C. § 1605A(c)(1).  *Lee II*, 656 F. Supp. 3d at 57.  The court also has not yet determined liability or damages resulting from the remaining 68 attacks.  *Id.* at 21.

On July 5, 2023, the court appointed two additional Special Masters, Jim Letten, Esq. and Franklin D. Rosenblatt, Esq. to take evidence and file reports and recommendations regarding the claims of the 51 Plaintiffs covered by the *Lee II* decision.  Order Appointing Two Additional Special Masters, ECF No. 86, at 1.  The court instructed that the Special Masters "will be guided in reviewing and evaluating damages claims by cases brought under the Terrorism Exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, including *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269, 318 (D.D.C. 2006), and *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010)."  *Id.* at 4.

Before the court is Special Master Jim Letten's Second Report and Recommendations Regarding Damages for 14 Plaintiffs Identified in the Court's January 30, 2023, Order, ECF No. 137 [hereinafter Report].  This opinion addresses the outstanding liability issues as to 13 of these 14 Plaintiffs, who are family members of wounded or deceased soldiers and who bring solatium claims, and damages as to all 14 Plaintiffs, including the estate of a deceased soldier.

## III.

### A.    Solatium Claims

#### 1.    Liability

"Solatium claims under the FSIA are functionally identical to claims for intentional infliction of emotional distress." *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015).  "They are intended to compensate persons for mental anguish, bereavement, and grief that those with a close personal relationship to a decedent experience, as well as the harm caused by the loss of the decedent's society and comfort." *Id.* (cleaned up).  "Such claims are also available to compensate along similar lines those related to persons merely injured, rather than killed, in a terrorist attack." *Id.*

Under the FSIA, "United States nationals or their legal representatives have standing to bring a cause of action for damages including solatium where personal injury or death results from state sponsored terrorism." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 29 (D.D.C. 1998) (citing 28 U.S.C. § 1605A(c)).  While solatium "began as a remedy for the loss of a spouse or a parent," "[i]t has since expanded to include the loss of a child, including in some states the loss of an emancipated or adult child." *Id.* at 29.  "Where the claim is based upon the loss of a sibling, the claimant must prove a close emotional relationship with the decedent." *Id.* at 30.

As noted, in *Lee II*, the court deferred finding Iran liable for the claims of family-member Plaintiffs due to the absence of proof satisfying two of the FSIA's threshold requirements for solatium claims.  *Lee II*, 656 F. Supp. 3d at 57 (finding that family-member Plaintiffs failed to satisfy the FSIA's nationality and "immediate family" requirements).  The Report addresses those deficiencies.  With respect to nationality, the Report cites each Plaintiff's birth certificate or passport and sworn declaration to conclude that each is a United States citizen—and was at the

time of the relevant attack.  *See* Report at 6 n.5, 12 n.51, 18 n.122, 22 n.177, 26 n.223, 29 n.264, 34 n.305, 35 n.325, 37 n.348, 40 n.370, 45 n.405, 49 n.455, 51 n.484.  The court thus finds that each of the 13 family-member Plaintiffs is a United States national and was at the time of the relevant attacks.

Each family-member Plaintiff also must have a qualifying relationship with the victim to receive solatium damages arising from their injury or death.  The court therefore reviews the Report to determine whether this second requirement is met.

>     a.     *Sergeant Nicholas Gene Koulchar*

Sgt. Koulchar was wounded in an attack on August 26, 2008, in Sadr City, Iraq.[1]  The court previously found Iran liable for this attack.  *Lee II*, 656 F. Supp. 3d at 35.

*Michael Koulchar.*    Michael is Sgt. Koulchar's younger brother and only sibling. Sgt. Koulchar "always looked out for him," and the brothers stayed in touch during Sgt. Koulchar's deployment.  Report at 6.  The brothers' roles "flipped" after the attack.  *Id.* at 9.  It wasn't until Michael arrived at the hospital and saw his brother in a medically induced coma, with both of his legs amputated, that Michael became aware of the severity of his brother's injuries.  Seeing his brother in that condition was "shocking and painful" for Michael, "rendering him in disbelief."  *Id.* at 8.  Michael agreed "without hesitation" to serve as his brother's non-medical attendant for more than 2.5 years, a full-time responsibility that ultimately led him to drop out of school and break up with his girlfriend of two years.  *Id.*  After Sgt. Koulchar was discharged from the hospital, Michael continued to help care for him and lived with him until approximately 2013.  *Id.* at 9.  Seeing his

---

[1] A member of Sgt. Koulchar's unit was killed in the attack.  *See* Pls.' Second Proposed Findings of Fact & Conclusions of Law, ECF No. 53, Ex. B, ECF No. 53-2, at 168–73; *accord* Report at 4 n.4.  Accordingly, the court has jurisdiction over claims seeking money damages for personal injuries caused by this attack.  *See Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1060–62 (D.C. Cir. 2024) (holding that the FSIA's terrorism exception, 28 U.S.C. § 1605A, does not apply to cases in which "the perpetrator did not kill anyone in the attack that injured the [plaintiffs]").

big brother struggle was very difficult for Michael, as "Nick was the strongest person he knew," and his brother's injuries changed "the entire trajectory" of Michael's life. *Id.* The court thus finds that Michael Koulchar is Sgt. Koulchar's sibling, with whom he shared a close relationship. As a qualifying relative, Michael is entitled to recover solatium damages arising from Sgt. Koulchar's injuries.

b.    *Specialist Preston Charles Kaplan*

SPC Kaplan was wounded in an attack on April 29, 2008, in Baghdad, Iraq.[2] The court previously found Iran liable for this attack. *Lee II*, 656 F. Supp. 3d at 47–48.

*Nicole Kaplan.* Nicole is SPC Kaplan's wife and therefore permitted to bring a solatium claim arising from her husband's injuries. *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015). The record here establishes that Nicole experienced significant suffering as a result of SPC Kaplan's injuries, describing how she felt "powerless" to help her husband and unable to express her emotions. Report at 14–22. After the attack, the couple's marriage eroded, *id.* at 16–17, and Nicole was ultimately forced to leave the military to help care for her husband and their infant daughter, *id.* at 17. Nicole's caretaking responsibilities were substantial; she lived with her husband in the hospital for the first eight months, oversaw his medical care through four years of inpatient and outpatient treatment, and became "more of a mother to Preston than his wife." *Id.* at 15–16. Nicole is therefore entitled to recover solatium damages arising from SPC Kaplan's injuries.

*Nona Kaplan.* As SPC Kaplan's mother, Nona is likewise permitted to bring a solatium claim arising from her son's injuries. *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015). The day she

---

[2] A member of SPC Kaplan's unit was killed in the attack. *See* Pls.' Second Proposed Findings of Fact & Conclusions of Law, ECF No. 53, Ex. B, ECF No. 53-2, at 162–67; *accord* Report at 4 n.4. Accordingly, the court has jurisdiction over claims seeking money damages for injuries caused by this attack. *See Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1060–62 (D.C. Cir. 2024) (holding that the FSIA's terrorism exception, 28 U.S.C. § 1605A, does not apply to cases in which "the perpetrator did not kill anyone in the attack that injured the [plaintiffs]").

heard that her son was injured "was the worst day in her life." Report at 20. She "lived in constant fear that he would die in surgery or from an infection," and she endured financial hardship traveling back and forth between Fresno, California, and Washington, D.C., to visit her son. *Id.* at 21. As she describes it, "her life was hell" and "she felt as though she lost everything inside of her." *Id.* Nona is therefore entitled to recover solatium damages arising from SPC Kaplan's injuries.

*David Kaplan.* As SPC Kaplan's father, David also may bring a solatium claim arising from his son's injuries. *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015). Watching his son struggle with pain, depression, and drug use following the attack and the subsequent amputation of his right leg "breaks [David's] heart," and his life was "forever changed" as a result. Report at 25. David is therefore entitled to recover solatium damages arising from SPC Kaplan's injuries.

*Jaime Zarcone.* Jaime is SPC Kaplan's older sister. Growing up, they were "two peas in a pod." Report at 26. Their bond only strengthened as they grew older, as Jaime cared for her younger siblings while their single mother worked. *Id.* They kept in contact during SPC Kaplan's two deployments, and when Jaime learned that her brother had been injured, she "jumped on a plane" to meet him at the hospital. *Id.* at 28. Due to Jaime's personal and professional obligations, including caring for her three small children and managing her own business, she was able to visit her brother only a couple of times during his hospitalization, but she received "constant" updates from Nicole, and she spoke with him about the pros and cons of amputating his leg. *Id.* Still, she was "afraid that her brother would never recover from his injuries," and she felt "helpless" and "heartbroken" witnessing his "dark times, behavior changes, and [substance] abuse." *Id.* The court thus finds that Jaime Zarcone is SPC Kaplan's sibling, with whom he shared a close relationship. As a qualifying relative, Jaime is entitled to recover solatium damages arising from SPC Kaplan's injuries.

*Jessalyn Holt.*  Jessalyn is SPC Kaplan's younger sister.  They "spent a lot of time together" growing up, and SPC Kaplan was "very protective over her."  Report at 29–30.  After the attack, Jessalyn "constantly worried for her brother," "afraid that he would not make it," and she "felt helpless and sad" in the face of his suffering.  *Id.* at 31–32.  She visited him four times while he was in the hospital, helping him with doctors' appointments and spending time with him, and they remain "very close" today.  *Id.* at 30–31.  The court thus finds that Jessalyn Holt is SPC Kaplan's sibling, with whom he shared a close relationship.  As a qualifying relative, Jessalyn is entitled to recover solatium damages arising from SPC Kaplan's injuries.

### c.    Sergeant Jason Lopez Reyes

Sgt. Lopez Reyes was killed in an attack on January 5, 2006, in Baghdad, Iraq.  The court previously found Iran liable for this attack.  *Lee II*, 656 F. Supp. 3d at 37–38.

*Zoraima Lopez.*  Zoraima is Sgt. Lopez Reyes's older sister.  The siblings were "extremely close" growing up, and "[t]hey did everything together."  Report at 34.  When she heard that her brother had been killed, she felt like "her heart was being ripped out of her chest."  *Id.* at 35.  His sudden death left Zoraima "confused and anxious about the safety of her other loved ones," and the pain she feels today "feels the same as the day he died."  *Id.* at 35.  The court thus finds that Zoraima Lopez is Sgt. Lopez Reyes's sibling, with whom he shared a close relationship.  As a qualifying relative, Zoraima is entitled to recover solatium damages arising from Sgt. Lopez Reyes's death.

*Veronica Lopez Reyes.*  Veronica is Sgt. Lopez Reyes's younger sister.  She and her brother "shared a special bond and were always together."  Report at 35.  She describes her brother as "such a light in her life," and her life "has never been the same" since he died.  *Id.* at 36.  His death was "debilitating" to the point that she "could not work, had to take medication to sleep through

the night, and suffered from constant headaches." *Id.* She also struggles with depression. *Id.* The court thus finds that Veronica Lopez Reyes is Sgt. Lopez Reyes's sibling, with whom he shared a close relationship. As a qualifying relative, Veronica is entitled to recover solatium damages arising from Sgt. Lopez Reyes's death.

*Gladys E. Reyes Centeno.* Gladys, Sgt. Lopez Reyes's mother, experienced significant suffering as a result of her son's death. He was "the soul of [their] home" and "central to [their] life." Report at 37–38. The day he died was the day "her world stopped," and she "will forever be in mourning." *Id.* at 38. Holidays are now "unbearable," for they serve as "a constant reminder that he is not here." *Id.* Gladys is therefore entitled to recover solatium damages arising from Sgt. Lopez Reyes's death. *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015).

### d.    Private First Class Christopher Brook Fishbeck

PFC Fishbeck was killed in an attack on June 6, 2011, in Baghdad, Iraq. The court previously found Iran liable for this attack. *Lee II*, 656 F. Supp. 3d at 49–51.

*Stephanie Kidder.* Stephanie is the widow of PFC Fishbeck, and his death "so overwhelmed [her] with grief that [she] disconnected from the world." Report at 41. Losing him mere months after their wedding has caused her to suffer from depression and anxiety. *Id.* She also "lives in constant fear that she will lose someone [else] close to her." *Id.* at 42. As she describes it, "the attack that took his life robbed me of our future and has impacted every aspect of my life and the person who I am today." *Id.* Stephanie is therefore entitled to recover solatium damages arising from PFC Fishbeck's death. *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015).

### e.    Corporal Edgardo Zayas

SPC Zayas was killed in an attack on August 26, 2006, in Jisr Diyala, Iraq. The court previously found Iran liable for this attack. *Lee II*, 656 F. Supp. 3d at 39–40.

*Suheil Campbell.*  Suheil, SPC Zayas's widow, was awaiting her husband's weekly call when she learned that he had been killed in action.  Report at 46.  The news was so traumatizing, she "lost consciousness and had to be taken to the hospital."  *Id.* at 47.  She then undertook the "heartbreaking" task of telling her two children that their father had died.  *Id.* at 48.  Today, she "tries to keep Edgar's memory alive," and "there is not a day that goes by where she does not think about [him]."  *Id.*  Suheil is therefore entitled to recover solatium damages arising from SPC Zayas's death.  *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015).

*Alexander Zayas.*  Alexander was seven years old when his father died.  Report at 49.  In his words, he "became the man of the house" at that time, but he "felt that there was always a void without his father there."  *Id.* at 50.  His father's death left him feeling "angry," "powerless," and "responsible for so much."  *Id.* at 50–51.  According to Alexander, "[t]he attack that took his [father's] life also took the childhood that I was supposed to have."  *Id.* at 51.  Alexander is therefore entitled to recover solatium damages arising from SPC Zayas's death.  *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015).

*Alexa Zayas.*  Alexa was four years old when her father died.  Report at 51.  Consequently, she "grew up without a father at every milestone in her life," from birthdays to graduations.  *Id.* at 52.  His loss taught her "never to take[] anyone in her life for granted," as she knows that "a loved one can be here one day and gone tomorrow."  *Id.*  To cope with the pain, she "goes numb."  *Id.* at 53.  She has also felt "conflict[ed]" and "confus[ed]" when hearing her father's voice and looking at his belongings, because he is "the most familiar stranger in [her] life."  *Id.* at 51–53.  Alexa is therefore entitled to recover solatium damages arising from SPC Zayas's death.  *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015).

2.      **Damages**

Because the court concurs with the Special Master that each of the 13 family-member Plaintiffs is entitled to solatium damages, the only remaining issue is the amount of the awards. "In determining the appropriate award of damages for solatium, the Court may look to prior decisions awarding damages for intentional infliction of emotional distress as well as to decisions regarding solatium." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 78 (D.D.C. 2010). This District "has developed a general framework for the calculation of proper damage awards in FSIA cases" based on principles articulated in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269–70 (D.D.C. 2006). *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011). "Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings," and "families of victims who have died are typically awarded greater damages than families of victims who remain alive." *Heiser*, 466 F. Supp. 2d at 269.

Under this framework, spouses of deceased victims receive $8 million, parents and children[3] receive $5 million, and siblings receive $2.5 million. *Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 27 (D.D.C. 2014) (citing *Heiser*, 466 F. Supp. 2d at 269, and *Valore*, 700 F. Supp. 2d at 85). Where the victim does not die, but instead suffers injury, the solatium awards are halved: Spouses receive $4 million, parents and children receive $2.5 million, and

---

[3] The court notes that there is some discrepancy in the baseline amount awarded to children, with some courts awarding the children of deceased victims $5 million and others awarding $3 million. *Compare Oveissi*, 768 F. Supp. 2d at 26 ("[C]hildren [of deceased victims] received $5 million . . . ."), *with Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012) ("Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million."). The court finds that a $5 million solatium award is the appropriate baseline for children of deceased victims, as established in *Heiser*. *See Heiser*, 466 F. Supp. 2d at 318 ("[T]he Court typically awards children of [deceased] terrorist attack victims $5 million to compensate them for the severe emotional distress associated with losing a parent[.]"); *accord Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007) ("Parents of victims typically receive awards similar in amount to those awarded to children of the victim."); *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 260 (D.D.C. 2014) ("[C]hildren of deceased and injured victims should receive awards akin to those given to parents.").

siblings receive $1.25 million. *Id.* These numbers, however, "are not set in stone," and courts "may award greater amounts in cases with 'aggravating circumstances.'" *Valore*, 700 F. Supp. 2d at 85; *see also Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*, 892 F.3d 348, 351 (D.C. Cir. 2018) ("District Court judges have discretion under 28 U.S.C. § 1608(e) to grant solatium awards based on the particular facts of each case, subject to abuse-of-discretion review for errors of law, clearly erroneous factual findings, and faulty reasoning.").

Here, the Special Master has recommended the following monetary awards for each of the 13 family-member Plaintiffs based on their relationship to the victim and, for four Plaintiffs, the existence of aggravating circumstances:

| Name of Victim | Status of Victim | Name of Plaintiff | Relationship to Victim | Recommended Award |
|---|---|---|---|---|
| Nicholas Gene Koulchar | Wounded in Action | Michael Koulchar | Sibling | $2 million |
| Preston Charles Kaplan | Wounded in Action | Nicole Kaplan | Spouse | $6.4 million |
| | | Nona Kaplan | Parent | $2.5 million |
| | | David Kaplan | Parent | $2.5 million |
| | | Jaime Zarcone | Sibling | $1.25 million |
| | | Jessalyn Holt | Sibling | $1.25 million |
| Jason Lopez Reyes | Killed in Action | Zoraima Lopez | Sibling | $2.5 million |
| | | Veronica Lopez Reyes | Sibling | $2.5 million |
| | | Gladys E. Reyes Centeno | Parent | $5 million |
| Christopher Brook Fishbeck | Killed in Action | Stephanie Kidder | Spouse | $8 million |
| Edgardo Zayas | Killed in Action | Suheil Campbell | Spouse | $8 million |
| | | Alexander Zayas | Child | $6.25 million |
| | | Alexa Zayas | Child | $6.25 million |

Report at 55. In the four cases involving aggravating circumstances, the Special Master recommended upward adjustments of (1) 60% for Michael Koulchar, based on the level of care he has provided to his injured brother, *id.* at 10; (2) 60% for Nicole Kaplan, based on the level of care she has provided to her injured husband, *id.* at 18; (3) 25% for Alexander Zayas, based on the fact

that he was a minor at the time his father died, *id.* at 51, and (4) 25% for Alexa Zayas, based on the fact that she was a minor at the time her father died, *id.* at 53.

Based on the findings the court has already made regarding the relationships between each of the 13 Plaintiffs and the victims, and having considered the significant hardship and emotional distress each Plaintiff has suffered due to their loved ones' death or injuries, the court agrees that the recommended baseline awards are reasonable. The court further agrees that the recommended upward adjustments are warranted for the reasons stated by the Special Master, which are well supported by this District's caselaw. *See, e.g.*, *Schooley v. Islamic Republic of Iran*, No. 17-cv-1376 (BAH), 2019 WL 2717888, at *78 (D.D.C. June 27, 2019) (granting upward adjustments to parents of injured service members "based on the extraordinary circumstances they endure, living with, and caring for, their injured service member children"); *Cabrera v. Islamic Republic of Iran*, No. 18-cv-2065 (JDB), 2023 WL 3496303, at *9 (D.D.C. May 16, 2023), *rev'd and remanded on other grounds sub nom. K.E.F.V. v. Islamic Republic of Iran*, No. 23-7076, 2025 WL 1226714 (D.C. Cir. Apr. 29, 2025) (concluding that an upward departure was appropriate where the victim's wife "ha[d] suffered particularly heavy emotional tolls of caring for her husband and coping with his injuries"); *Mark v. Islamic Republic of Iran*, 626 F. Supp. 3d 16, 38–39 (D.D.C. 2022) (awarding $6.25 million to child of deceased victim who was a minor at the time the victim died); *Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40, 75 (D.D.C. 2021) (same); *see also Valore*, 700 F. Supp. 2d at 86 (holding that upward departures should be awarded where there is testimony describing "a general feeling of permanent loss or change caused by [the victim's] absence").

### B.    Economic Loss Claim

The plaintiff-estate of SPC Zayas seeks compensation for lost wages, benefits, and retirement pay. Report at 53. "Section 1605A explicitly provides that foreign state-sponsors of

terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(c)). "Traditionally, plaintiffs may prove economic losses by the submission of a forensic economist's expert report." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 60 (D.D.C. 2018). "When evaluating an expert's report, the Court must consider the reasonableness and foundation of the assumptions relied upon by the expert." *Id.*

The Special Master's recommendation of economic damages was based on an economic loss report prepared by Dr. Stan Smith, which appraises the value of SPC Zayas's work life. Report at 53. Dr. Smith has provided economic loss reports in terrorism cases that have been adopted by courts, including the court in this action. *See, e.g.*, Mem. Op., ECF No. 159, at 6–7. The Special Master described the methodology that Dr. Smith used to calculate the economic loss caused by SPC Zayas's death. Report at 54. Based on a review of the record, the court finds that Dr. Smith's calculations, and the assumptions Dr. Smith relied on, are reasonable. Accordingly, the court adopts the Special Master's recommendation and awards the plaintiff-estate of SPC Zayas $4,133,109 in economic damages.

## IV.

For the reasons set forth above, the court adopts the Special Master's recommendations as to the 14 Plaintiffs addressed in the Report, ECF No. 137.

A separate Order and Judgment consistent with these findings accompanies this Memorandum Opinion.

Dated: May 23, 2025

Amit P. Mehta
United States District Judge